UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISON

| | | |
|---|---|---|
| Richmond Road Partners, LLC, et al., | ) | CASE NO. 1:23 CV 1662 |
| | ) | |
| Plaintiffs, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| vs. | ) | |
| | ) | |
| City of Warrensville Heights, et al., | ) | |
| | ) | **Memorandum Opinion and Order** |
| | ) | |
| Defendants. | ) | |

## INTRODUCTION

This matter is before the Court upon Plaintiffs' Fed. R. Civ. P. 59(e) Motion for Reconsideration. (Doc. 20.) This case arises from a zoning dispute wherein municipal defendants denied plaintiffs' site plan application, which was later approved on administrative appeal. For the reasons that follow, the motion is denied.

## FACTS

As detailed more fully in this Court's Memorandum of Opinion and Order on Defendants' Motion for Judgment on the Pleadings, plaintiffs Richmond Road Partners, LLC ("Richmond Road Partners") and Step Forward (collectively, "Plaintiffs") applied for preliminary/final site plan approval on November 21, 2022, to open a Step Forward facility on property owned by Richmond Road Partners in the city of Warrenville Heights.

On December 12, 2022, Plaintiffs appeared before Defendant City of Warrensville Heights Planning Commission (the "Planning Commission"), who denied the application. On February 7,

2023, Plaintiffs appeared before defendant Warrensville Heights City Council (collectively with the Planning Commission, "Defendants"), who accepted the Planning Commission's recommendation and denied the application.

On March 8, 2023, Plaintiffs filed an administrative appeal pursuant to Ohio Revised Code § 2506 with the Cuyahoga County Court of Common Pleas.[1] On October 4, 2023, that court found in Plaintiffs' favor, ruling that Defendants' decision denying Plaintiffs' application was arbitrary, unreasonable, and unsupported by the preponderance of the submitted evidence. The court remanded the matter, directing Defendants to grant Plaintiffs' application.

On July 27, 2023, while the administrative appeal was pending, Plaintiffs filed this civil lawsuit against Defendants in the Cuyahoga County Court of Common Pleas.[2] Plaintiffs' complaint asserted four causes of action. Count I sought a declaration that Defendants' decision denying Plaintiffs' application was unconstitutional, arbitrary, capricious, unreasonable, and without substantial relation to the public health, safety and morals. Count II claimed that Defendants' denial of Plaintiffs' application amounted to an unconstitutional regulatory taking, in violation of the Ohio Constitution and the United States Constitution. Count III sought an injunction to initiate appropriation proceedings to determine compensation for the alleged taking. Lastly, Count IV claimed that Defendants' alleged taking violated Plaintiffs' rights under the Fifth and Fourteenth

---

[1] *Richmond Road Partners, LLC, et al. v. Warrensville Heights City Counsel, et al.*, Cuyahoga County Court of Common Pleas, CV-23-976289, filed Mar 8, 2023.

[2] *Richmond Road Partners, LLC, et al. v. City of Warrensville Heights, et al.*, Cuyahoga County Court of Common Pleas, CV-23-983040, filed July 27, 2023.

Amendments to the United States Constitution and the Ohio Constitution in violation of 42 U.S.C. §§ 1983 and 1988.

Defendants removed the case to this Court and, on January 30, 2024, filed a motion for judgment on the pleadings. Plaintiffs opposed the motion. On May 9, 2024, this Court granted Defendants' Motion for Judgment on the Pleadings and entered judgment in Defendants' favor. On June 6, 2024, Plaintiffs filed the present Motion for Reconsideration. Defendants oppose the motion.

**STANDARD OF REVIEW**

The Federal Rules of Civil Procedure do not provide for motions for reconsideration. The Sixth Circuit, however, allows for such an operation, reasoning that a motion to reconsider may be treated as a motion to alter or amend a judgment under Fed. R. Civ. P. 59(e). *See Rodriguez v. City of Cleveland*, 2009 WL 1565956, at *1 (N.D. Ohio June 6, 2009) (citing *Smith v. Hudson*, 600 F.2d 60, 62 (6th Cir. 1979)). Nonetheless, such motions are disfavored and seldom granted because they contradict notions of finality and repose. *Id.*; *see also Wells Fargo Bank v. Daniels*, 2007 WL 3104760, at *1 (N.D. Ohio Oct. 22, 2007); *Plaskon Elec. Materials, Inc. v. Allied-Sigal, Inc.*, 904 F. Supp. 644, 669 (N.D. Ohio 1995).

A court may grant a motion to amend or alter judgment if there has been (1) a clear error of law; (2) an intervening change in controlling law; (3) newly discovered evidence; or (4) a showing of manifest injustice. *Jones v. Gobbs*, 21 F. App'x 322, 323 (6th Cir. 2001) (citing *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999)). A motion to reconsider "is not designed to give an unhappy litigant an opportunity to relitigate matters already decided, nor is it a substitute for appeal." *Sherwood v. Royal Ins. Co. of Am.*, 290 F. Supp. 2d 856, 858 (N.D. Ohio 2003) (citing

*Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998)). "It is not the function of a motion to reconsider either to renew arguments already considered and rejected by a court or 'to proffer a new legal theory or new evidence to support a prior argument when the legal theory or argument could, with due diligence, have been discovered and offered during the initial consideration of the issue.'" *McConocha v. Blue Cross & Blue Shield Mut. of Ohio*, 930 F. Supp. 1182, 1184 (N.D. Ohio 1996) (quoting *In re August, 1993 Regular Grand Jury*, 854 F. Supp. 1403, 1408 (S.D. Ind. 1994)).

## ANALYSIS

Plaintiffs argue that this Court should alter or amend its May 9, 2024 Judgment Entry (the "Judgment Entry") dismissing Plaintiffs' complaint because (1) this Court committed clear errors of law; (2) newly discovered evidence supports Plaintiffs' Takings Clause claim, and (3) dismissing Plaintiffs' claims risks a manifest injustice. The Court will address each argument in turn.

1. **Clear Errors of Law**

As explained in this Court's Memorandum of Opinion and Order filed contemporaneously with the Judgment Entry, Plaintiffs claims were dismissed for two separate reasons. First, Plaintiffs' Count I (seeking a declaration that Defendants' decision to deny Plaintiffs' application was arbitrary, capricious, and unsupported by the evidence) is moot because Plaintiffs received this requested relief in the state court administrative proceedings. Plaintiffs seem to agree with the Court's dismissal of Count I and do not raise any reason in their Motion as to why Count I should not have been dismissed. (*See* Doc. 20, at 6–7 ("[T]he Court determined that only the claim for declaratory judgment was moot. . . . Plaintiffs agree with that characterization."); *id.* at 9 ("The only part of [Plaintiffs'] current claim that overlaps the facts of the [administrative] appeal is the legality of the administrative determination itself.").)

4

Second, Counts II, III, and IV were dismissed because Plaintiffs failed to plead sufficient facts to establish a Takings Clause claim.[3] In determining that Plaintiffs' complaint failed to allege a taking, this Court relied on *Snyder v. Vill. of Luckey*, 2024 WL 556134, at *6–8 (N.D. Ohio Feb. 12, 2024), which in turn relied on the Supreme Court's pronouncement in *Agins v. City of Tiburon*, 447 U.S. 255 (1980), that "[m]ere fluctuations in value during the process of governmental decisionmaking, absent extraordinary delay, are 'incidents of ownership. They cannot be considered as a "taking" in the constitutional sense.'" *Id.* at 263 n.9.

Plaintiffs argue that the Court's application of *Snyder* is "not analogous" to the present case and "its proposed application is contrary to law." (Doc. 20, at 12.) According to Plaintiffs, *Snyder* is inapplicable because the "taking" in *Snyder* was a delay caused by government processes, whereas here Plaintiffs frame the taking as the Planning Commission's denial itself. Essentially, Plaintiffs ask this Court to find that an arbitrary, capricious, and unsupported denial of a site application amounts to a taking—irrespective of any burden on a property owner.

Plaintiffs' position, however, directly contradicts established Fifth Amendment Takings Clause jurisprudence. In fact, the "substantially advances" test that Plaintiffs rely on to support their position was explicitly abrogated by the Supreme Court in 2005. In *Lingle v. Chevron U.S.A. Inc.*,

---

[3] Plaintiffs raise an issue with a footnote at the end of the Court's Memorandum of Opinion and Order that noted Plaintiffs' claims that could have been raised alongside their administrative appeal are barred under the doctrine of res judicata. Nothing in that footnote served as the basis for the Court's dismissal of any of Plaintiffs' claims and, therefore, cannot serve as a basis to alter the Judgment Entry. Even so, Plaintiffs acknowledge that, under Sixth Circuit authority, "if a plaintiff chooses to pursue an administrative appeal, claim preclusion may bar a later attempt to seek **the same relief**." (Doc. 20, at 7 (quoting *Harrison v. Montgomery Cty.*, 997 F.3d 643, 651 (6th Cir. 2021) (emphasis added by Plaintiffs).) As noted above, Plaintiffs acknowledge that their Count I seeks the same relief as the administrative appeal.

544 U.S. 528 (2005), the Court held that the "substantially advances" test, first outlined in *Agins*, "is not a valid takings test, and . . . has no proper place in our takings jurisprudence." *Lingle*, 544 U.S. at 548.[4]

Without the "substantially advances" test, Plaintiffs cite no case law to support their position that they can establish a Takings Clause claim based on the validity of the Planning Commission's

---

[4] Plaintiffs also cite to *State ex rel. Shemo v. City of Mayfield Heights*, 765 N.E.2d 345 (2002). Although *Shemo*'s adoption of *Agins*'s "substantially advances" test has not been explicitly overruled or abrogated, the Supreme Court of Ohio seems to have implicitly dropped the "substantially advances" test from its takings jurisprudence in the wake of *Lingle*. *See State ex rel. Shelly Materials, Inc. v. Clark Cty. Bd. of Comm'rs*, 875 N.E.2d 59, 65 (Ohio 2007) (citing *Lingle* for the applicable standards that establish a taking without reference to *Agins*, *Shemo*, or the "substantially advances" test); *see also State ex rel. Anderson v. Obetz*, 2008 WL 3319285, at *2 (Ohio Ct. App. Aug. 12, 2008) (recognizing *Shemo*'s implied overruling).

And while the Court acknowledges that the Ohio Supreme Court has held that Article I, § 19 of the Ohio Constitution affords greater protection than the federal Takings Clause in certain instances of physical takings, *compare Kelo v. City of N. London*, 545 U.S. 469 (2005) (holding that a city's use of its eminent domain power to take property for the purpose of economic development satisfies the "public use" requirement of the federal Takings Clause), *with Norwood v. Horney*, 110 Ohio St. 3d 353 (2006) (finding that an economic or financial benefit alone is insufficient to satisfy the public-use requirement of Article I, § 19 of the Ohio Constitution), Plaintiffs have not alleged a physical taking and, thus, "the analysis required to determine if a regulatory taking has occurred under the Ohio Constitution is the same analysis required to determine if a regulatory taking has occurred under the U.S. Constitution." *In re Davis*, 539 B.R. 334, 345 (Bankr. S.D. Ohio 2015) (citing *Wymsylo v. Bartec, Inc.*, 970 N.E.2d 898, 914–15 (Ohio 2012) (applying federal regulatory takings jurisprudence and determining that the regulation in question did not result in "the type of taking contemplated by either the Fifth Amendment to the United States Constitution or the Ohio Constitution, Article I, Section 19")).

Further, even if the Ohio Constitution affords greater protection to Plaintiffs' state-law claims, Plaintiffs have not offered any independent reason as to why their state-law claims should survive under Ohio's takings jurisprudence. As such, to the extent it was unclear in the Court's original Memorandum and Opinion and Order, the Court finds that Plaintiffs failed to plead a takings claim under Article I, § 19 of the Ohio Constitution and the Fifth Amendment of the United States Constitution. *See State ex. Rel AWMS Water Sols., LLC v. Mertz*, 165 N.E.3d 1167, 1177 (Ohio 2020) (citing *State ex rel. Shelly Materials, Inc. v. Clark Cty. Bd. of Comm'rs*, 875 N.E.2d 59, 65 (Ohio 2007)).

actions alone.[5] Rather, the Supreme Court has explained that a plaintiff can establish a Takings Clause claim by alleging either (1) "a 'physical' taking," (2) "a *Lucas*[ *v. S. Carolina Coastal Council*, 505 U.S. 1003 (1992)]-type 'total regulatory taking,'" (3) "a *Penn Central*[ *Transp. Co. v. City of New York*, 438 U.S. 104 (1978)] taking," or (4) "a land-use exaction violating the standards set forth in *Nollan*[ *v. Cal. Coastal Comm'n*, 483 U.S. 825 (1987)]and *Dolan*[ *v. City of Tigard*, 512 U.S. 374 (1994)]*,*." *Lingle*, 544 U.S. at 548. Here, Plaintiffs do not allege a physical taking, a *Lucas*-type total regulatory taking, or a land-use exaction. Accordingly, the alleged regulatory taking of Plaintiffs' property is assessed under *Penn Central*. *See Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 321 (2002).

"[T]he *Penn Central* inquiry turns in large part, albeit not exclusively, upon the magnitude of a regulation's economic impact and the degree to which it interferes with legitimate property interests." *Lingle*, 544 U.S. at 540. Also relevant may be the "'character of the governmental action'—for instance whether it amounts to a physical invasion or instead merely affects property

---

[5] To the extent Plaintiffs are asking this Court to establish a new standard for a Takings Clause claim based on the validity of the underlying government regulation, the Supreme Court's takings jurisprudence forecloses Plaintiffs' request. As the Supreme Court has explained, the "common touchstone" of takings jurisprudence is "to identify regulatory actions that are functionally equivalent to the classic taking in which government directly appropriates private property or ousts the owner from his domain." *Lingle*, 544 U.S. at 539. Accordingly, the focus in a takings claim is "the severity of the burden that government imposes upon private property rights." *Id.*

In contrast, Plaintiffs' suggested focus on the legitimacy of the Planning Commission's denial, like the "substantially advances" inquiry, "reveals nothing about the magnitude or character of the burden a particular regulation imposes upon private property rights. Nor does it provide any information about how any regulatory burden is distributed among property owners." *Id.* at 542. A challenge to a regulation's underlying validity, "is logically prior to and distinct from the question whether a regulation effects a taking, for the Takings Clause presupposes that the government has acted in pursuit of a valid public purpose." *Id.* at 543.

interests through 'some public program adjusting the benefits and burdens of economic life to promote the common good[.]'" *Id.* at 539. Further, under the *Penn Central* framework, courts must focus on "the parcel as a whole." *Penn Central*, 438 U.S. at 130–31 ("'Taking' jurisprudence does not divide a single parcel into discrete segments and attempt to determine whether rights in a particular segment have been entirely abrogated. In deciding whether a particular governmental action has [a]ffected a taking, this Court focuses rather both on the character of the action and on the nature and extent of the interference with rights in the parcel as a whole."); *see also Tahoe-Sierra Pres. Council, Inc.*, 535 U.S. at 327 ("'[W]here an owner possesses a full "bundle" of property rights, the destruction of one "strand" of the bundle is not a taking.'" (quoting *Andrus v. Allard*, 444 U.S. 51, 65–66 (1979)). Relying on the standard and principals set forth in *Penn Central*, the Supreme Court has stated that "[m]ere fluctuations in value during the process of governmental decisionmaking, absent extraordinary delay, are 'incidents of ownership. They cannot be considered as a "taking" in the constitutional sense'" *Tahoe-Sierra Pres. Council, Inc.*, 535 U.S. at 332 (quoting *Agins*, 447 U.S. at 263 n.9) (further citations omitted).

Applying this established takings jurisprudence to Plaintiffs' claims, this Court found that any devaluation in Plaintiffs' property interests[6] caused by the Planning Commission's actions was not because of any extraordinary delay and, thus, as a matter of law, could not establish a Takings Clause claim. (Doc. 18, at 7 ("While plaintiffs argue a delay occurred, a one-year delay is not

---

[6] Plaintiffs take issue with this Court's finding that they failed to allege a cognizable property interest based on their lost rental income. (*See* Doc. 20, at 13.) However, as the Court held in its previous Memorandum Opinion and Order and now re-explains here, even if Plaintiffs alleged a cognizable property interest, they have failed to allege a taking.

extraordinary and does not give rise to a takings claim." (citing *Agins* (two-year delay not extraordinary), and *Tahoe-Sierra Pres. Council, Inc.* (thirty-two month delay not extraordinary), and *Wyatt v. United States*, 271 F.3d 1090, 1097–1100 (Fed. Cir. 2001) (seven-year delay not extraordinary)).) Plaintiffs do not cite any case law that suggests the Court applied incorrect law. Nor do Plaintiffs argue that any devaluation of their property rights was caused by an extraordinary delay. Rather, Plaintiffs double down on their contention that the length of any delay is irrelevant because the Planning Commission's denial itself somehow establishes a taking. For the reasons discussed above, Plaintiffs' contention is entirely without merit.

For that reason, and all the aforementioned reasons, no clear error of law warrants an amendment or alteration to this Court's Judgment Entry dismissing Plaintiffs' claims.

**2. Newly Discovered Evidence**

Plaintiffs also contend that newly discovered evidence supports their Takings Clause claims and warrants altering the Judgment Entry dismissing the same. This Court dismissed Plaintiffs' claims as a matter of law on Defendants' Motion for Judgment on the Pleadings. Fed R. Civ. Pro. 12(c). In reviewing a Rule 12(c) motion, courts can consider all available pleadings, including the complaint and the answer. *Dudek v. Thomas & Thomas Attorneys & Counselors at Law, LLC*, 702 F. Supp. 2d 826, 832 (6th Cir. 2010) (citing Fed. R. Civ. P. 12(c)). "The court can also consider: (1) any documents attached to, incorporated by, or referred to in the pleadings; (2) documents attached to the motion for judgment on the pleadings that are referred to in the complaint and are central to the plaintiff's allegations, even if not explicitly incorporated by reference; (3) public records; and (4) matters of which the court may take judicial notice." *Id.* Courts may not, however, "consider

material outside of the pleadings unless the court converts the motion into one for summary judgment." *Hickman v. Laskodi*, 45 F. App'x 451, 454 (6th Cir. 2002) (citing Fed. R. Civ. P. 12(c)).

Nevertheless, Plaintiffs now ask this Court to alter the Judgment Entry and deny Defendants' Motion for Judgement on the Pleadings based on "newly discovered" deposition testimony, which was obtained during fact discovery while Defendants' motion was pending. As Defendants' properly point out, however, this deposition testimony is irrelevant to whether the pleadings can withstand Defendants' motion and, accordingly, is not a proper basis for altering the Judgement Entry. (Doc. 24, at 8.) Plaintiffs do not refute this basic principle in their reply brief.

For all the aforementioned reasons, no newly discovered evidence warrants an amendment or alteration to this Court's Judgment Entry dismissing Plaintiffs' claims.

### 3. Manifest Injustice

Last, Plaintiffs argue that dismissing Plaintiffs' claims risks causing manifest injustice by "render[ing] takings law theoretical and reward[ing] illegal and dishonest behavior by public officials." (Doc. 20, at 16.) "For [a] court to find manifest injustice, there must be 'a fundamental flaw in the court's decision that without correction would lead to a result that is both inequitable and not in line with applicable policy.'" *Sims Buick-GMC Truck, Inc. v. Gen. Motors LLC*, 2017 WL 7792553, at *3 (N.D. Ohio Mar. 1, 2017) (quoting *In re Bunting Bearings Corp.*, 321 B.R. 420, 423 (Bankr. N.D. Ohio 2004)).

Plaintiffs contend that "[i]f this Court were to hold that a city could not be sued for damages, including delays in the ability to use property, caused by unconstitutional zoning actions, no city could be held responsible as long as its decision were overturned on appeal for completely lacking legal basis." (Doc. 20, at 16.) According to Plaintiffs, "[a] city could, with impunity,

prevent landowners from using their land in lawful ways and defeat time-sensitive transactions by unlawfully denying the landowners' applications and merely permitting their determinations to be overturned on appeal." (*Id.*)

Contrary to Plaintiffs' argument, as explained above, the underlying validly of the Planning Commission's actions cannot form the basis of Plaintiffs'—or any—Takings Clause claim. Further, Plaintiffs' argument that governments could intentionally, arbitrarily interfere with landowners' property rights with impunity is a red herring. The law provides other avenues to challenge such allegedly unlawful government actions. *See Lingle*.

For all the aforementioned reasons, the Court's judgment applying established takings jurisprudence does not risk any manifest injustice and does not warrant an amendment or alteration to the Judgment Entry dismissing Plaintiffs' claims.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs' Fed. R. Civ. P. 59(e) Motion for Reconsideration (Doc. 20) is DENIED.

IT IS SO ORDERED.

/s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 7/22/24

11